UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

WALTER SPROUL                                                                                          Plaintiff

v.                                                                                        Civil Action No. 3:22-cv-635

SUN LIFE ASSURANCE COMPANY OF                                                         Defendant
CANADA

\* \* \* \* \*

### ORDER

Defendant Sun Life Assurance Company of Canada ("Sun Life") moves to dismiss or remand Plaintiff Walter Sproul's ("Sproul") Complaint. [DE 6]. Sproul responded [DE 8], and Sun Life replied [DE 11]. This matter is ripe. For the reasons below, Defendant's Motion to dismiss [DE 6] is **GRANTED** and the action is **REMANDED**.

### I.        BACKGROUND[1]

Sproul is insured under a long-term disability policy ("LTD Policy") issued and underwritten by Sun Life. [DE 1 at 2]. Sproul applied for disability benefits under the LTD Policy, alleging that he ceased work in December 2021 because of physical limitations caused by his disabling conditions and treatment regimen. [*Id.*]. On August 11, 2022, Sun Life notified Sproul that he did not satisfy the LTD Policy definition and denied his claim. [*Id.*].

Sproul contends that Sun Life "actively sought to deny his LTD Policy benefits" and in doing so "failed to strictly adhere to the ERISA claim regulations." [*Id.* at 2-3]. He also alleges that "Sun Life has been operating under an inherent and structural conflict of interest because any disability benefits . . . are paid from Sun Life's own assets." [*Id.* at 3].

---

[1] The following background is taken from the Complaint. [DE 1].

Sproul sued under the Employee Retirement Income Security Act ("ERISA"). [DE 1]. He alleges a breach of contract claim and requests attorneys' fees and costs. [DE 1 at 4-5]. Sun Life now moves to dismiss or remand Sproul's complaint. [DE 6].

## II.  STANDARD

Federal Rule of Civil Procedure 12(b)(6) instructs that a court must dismiss a complaint if the complaint "fail[s] to state a claim upon which relief can be granted[.]" Fed. R. Civ. P. 12(b)(6). To state a claim, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). When considering a motion to dismiss, courts must presume all factual allegations in the complaint to be true and make all reasonable inferences in favor of the non-moving party. *Total Benefits Plan. Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008) (citation omitted). "But the district court need not accept a bare assertion of legal conclusions." *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citation omitted). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do.  Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted).

To survive a motion to dismiss, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). "A complaint will be dismissed . . . if no law supports the claims made, if the facts alleged are insufficient to state a claim, or if the face of the complaint presents

an insurmountable bar to relief." *Southfield Educ. Ass'n v. Southfield Bd. of Educ.*, 570 F. App'x 485, 487 (6th Cir. 2014) (citing *Twombly*, 550 U.S. at 561–64).

Rule 12(d) of the Federal Rules of Civil Procedure provides that, if "matters outside the pleadings are presented and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." The Court, however, "may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein" without converting to a summary judgment. *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008).

### III.  DISCUSSION

Sun Life argues the Court should dismiss Sproul's complaint for failure to exhaust administrative remedies. [DE 6-1 at 21-22].[2] Sun Life also asserts that Sproul's obligation to exhaust administrative remedies is not eliminated by ERISA claims procedure regulations. [DE 6-1 at 22-27]. Sproul argues that Sun Life has violated the ERISA claim regulations resulting in exhaustion, [DE 8 at 107-08], and asserts that Sun Life's exhaustion defense is premature. [*Id.*] He also challenges Sun Life's use of documents that would convert the motion to dismiss into a motion for summary judgment. [DE 8 at 106-07].

#### A. Attached Documents

As an initial matter, the Court considers what documents, if any, may be considered outside the pleadings as part of Sun Life's 12(b)(6) motion. Sproul argues that nine of the eleven

---

[2] The parties do not dispute for this motion that the Plan is subject to ERISA's requirements or that Sproul was obligated to exhaust his administrative remedies before filing suit.

3

appendices attached by Sun Life are not properly considered by this Court[3] because they are neither "referenced nor attached to the complaint." [DE 8 at 107]. Sproul states that "the only documents that are conceivably part of the complaint—by reference or otherwise—would be the LTD policy (Doc. 6-2) and the termination letter (Doc. 6-3)." [*Id.*].

Ordinarily, a district court may not consider matters beyond the complaint when reviewing a motion to dismiss. *Winget v. JP Morgan Chase Bank, N.A.*, 537 F.3d 565, 576 (6th Cir. 2008). If the court does consider evidence outside the complaint, "it effectively converts the motion to dismiss to a motion for summary judgment." *Id.; see also Kostrzewa v. City of Troy*, 247 F.3d 633, 643 (6th Cir. 2001). It then must give the parties "a reasonable opportunity to present all the material that is pertinent to the [summary judgment] motion." Fed.R.Civ.P. 12(d). However, "[i]f referred to in a complaint and central to the claim, documents attached to a motion to dismiss form part of the pleadings." *Bank of Am., N.A. v. Corporex Realty & Inv., LLC*, 875 F. Supp. 2d 689, 697 (E.D. Ky. 2012) (*quoting Armengau v. Cline,* 7 Fed. App'x 336, 344 (6th Cir. 2001); *see also Rondigo, L.L.C. v. Twp. of Richmond,* 641 F.3d 673, 681 (6th Cir. 2011) (quoting *Bassett v. Nat'l Collegiate Athletic Ass'n,* 528 F.3d 426, 430 (6th Cir. 2008)) (A court may consider "exhibits [attached to the complaint], public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the complaint and are central to the claims contained therein.").

Sproul alleges throughout the Complaint that Sun Life breached the long-term disability insurance policy ("LTD Policy"). [DE 1 at 4, ¶¶]22-24. Likewise, he alleges that "by letter dated August 11, 2022, Sun Life notified Mr. Sproul that he did not satisfy the LTD Policy definition of

---

[3] Appendix 3 - 3/17/22 letter, Appendix 4 - 4/15/22 letter, Appendix 5 - 5/20/22 letter, Appendix 6 - 6/22/22 letter, Appendix 7 - 7/22/22 letter, Appendix 8 - 9/20/22 letter, Appendix 9 - 10/11/22 email, Appendix 10 - General Case Note, and Appendix 11 - 8/11/22 email. [DE 6].

4

disability and denied his claim." [DE 1 at 2 ¶11]. The parties do not dispute that Appendix 1, "Policy/Certificate/SPD" and Appendix 2, "8/11/22 letter" are relevant and may be construed as part of the complaint. [DE 8 at 107], [DE 11 at 123]. Sun Life even contends that "the Motion to Dismiss here can be decided on the basis of the Complaint along with the plan documents (the Policy/Certificate/SPD attached as Appendix 1) and the August 11, 2022 claim denial letter (attached as Appendix 2)." [DE 11 at 123]. These documents are central to the claims in the Complaint.

The other nine appendices Sun Life references are letters outlining the claim process and information the company would be gathering, notifications of claim status, letters from Plaintiff's attorney requesting information, and documents from Sun Life and other information not referred to in the complaint. These documents are not central to the claim and therefore not appropriately considered at the motion to dismiss stage. As Appendix 1 and 2 are central to Plaintiff's claim, the Court will consider the policy and the denial letter and will disregard the other appendices in ruling on this motion.

### B. Exhaustion of Administrative Remedies

"[T]he law is well settled that ERISA imposes a requirement of exhaustion of administrative remedies before commencing litigation in court." *Haynor v. Gen. Motors Corp.*, 606 F. Supp. 2d 675, 683–84 (E.D. Mich. 2009) (citing *Costantino v. TRW, Inc.*, 13 F.3d 969, 974 (6th Cir.1994) and 29 U.S.C. § 1133). "While 'application of the administrative exhaustion requirement in an ERISA case is committed to the sound discretion of the district court,' *Fallick v. Nationwide Mut. Ins. Co.*, 162 F.3d 410, 418 (6th Cir. 1998), that discretion must be exercised 'to excuse nonexhaustion where resorting to the plan's administrative procedure would simply be futile,' *id.* at 419; *see id.* at 420 ('[W]hen resort to the administrative review process would be an

exercise in futility, the exhaustion of remedies doctrine shall not apply.')." *Dozier v. Sun Life Assur. Co. of Canada*, 466 F.3d 532, 534 (6th Cir. 2006).

Employers subject to ERISA must establish certain procedures for review of adverse benefit determinations. 29 C.F.R. § 2560.503–1(b). This procedure must provide a "full and fair review" of adverse claim determinations. 29 C.F.R. § 2560.503–1(h)(1). However, the lack of an ERISA-compliant procedure or the failure to follow a plan procedure does not give rise to its own cause of action. Rather, the remedy is to treat a claimant as having exhausted the administrative remedies available under the plan. 29 C.F.R. § 2560.503–1(I). Under these circumstances, the claimant "shall be entitled to pursue any available remedies under section 502(a) of the Act on the basis that the plan has failed to provide a reasonable claims procedure that would yield a decision on the merits of the claim." 29 C.F.R. § 2560.503–1(I).

Sproul argues that he has exhausted his administrative remedies before filing suit because Sun Life violated ERISA claim regulations. [DE 8 at 102-03]. Sproul alleges four ways that Sun Life: (1) failed to establish and maintain reasonable procedures, (2) failed to provide a description of additional material or information necessary, (3) failed to explain the basis for disagreeing with Sproul's treating health care professionals, and (4) failed to consult a health care professional who has appropriate training and experience. [DE 1 at 2-3, ¶12].

Sun Life asserts that Sproul has not exhausted his administrative remedies and that it has complied with ERISA claim regulations. [DE 6-1 at 22]. Sun Life argues that it (1) has established and maintained reasonable procedures, (2) provided a description of what was necessary for Sproul to establish his disability, (3) provided a description of why it disagreed with the opinions of Sproul's medical providers, and (4) consulted a health care professional who has appropriate

training and experience, and in any case, need only do so when deciding an appeal. [DE 6 at 23-27].

*1. Reasonable Procedures*

First, Sproul argues that Sun Life did not maintain reasonable claims procedures governing the notification of adverse benefit determinations. [DE 8 at 8]. ERISA § 503, codified at 29 U.S.C. § 1133, provides:

> In accordance with regulations of the Secretary, every employee benefit plan shall—
> (1) provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant, and
> (2) afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim.

29 U.S.C. § 1133; *see also* 29 C.F.R. § 2560.503–1 (implementing regulation).

To be considered reasonable, "a plan's claims procedure must: (1) establish a procedure for the filing of claims by participants and beneficiaries, provide for a written notification procedure for denial or partial denial of claims, and provide for an appeal procedure for denied or partially denied claims; (2) be described in the Summary Plan Description, (3) not contain any provision and not be administered in a way that "unduly inhibits or hampers the initiation or processing of plan claims,' and (4) provide for a procedure for informing participants in a timely fashion of the time periods for decisions on claims made and the time periods for making appeals and receiving decisions thereon." *Fallick v. Nationwide Mut. Ins. Co.*, 162 F.3d 410, 413–14 n. 2 (6th Cir.1998) (citations omitted).

The claims procedure governing the notification of benefit determinations is found in Sun Life's "Policy/Certificate/Summary Plan Description." [DE 6-2 at 63]. Absent an extension of

7

time, a written notice of decision will be made within a reasonable time, no later than 45 days after receipt of a written claim, and will be done so "by paper, electronic or telephone media." [*Id*.]. If the claim is denied (or partially denied), a claimant has 180 days from receipt of the notice of denial to seek a review of the decision, which will be reviewed by a Sun Life appeal consultant "who is not bound by any findings of the initial review." [DE 6-3 at 80]. Sun Life has therefore complied with this requirement of establishing a procedure for filing a claim, notifying plan participants of claim denials in writing, and for appeals.

Sproul conflates whether Sun Life's plan complies with ERISA, with whether Sun Life has reasonable procedures governing the notification of benefit determinations. It may be that Sun Life has reasonable procedures governing the notification of benefit determinations, but violates ERISA by affording deference to the initial claims decision. But that fact alone would not make the notification of benefit determination procedure unreasonable.

Moreover, the claim procedure in Sun Life's denial letter does not violate ERISA. Sun Life requires a claimant who appeals a denial of benefits to "explain the reasons why you disagree with our decision." [DE 6-3 at 80]. Sproul argues this requirement violates 29 CFR 2560.503-1(h)(3)(ii) which states that a claims procedure must provide "for a review that does not afford deference to the initial adverse benefit determination." [DE 8 at 109-110]. Sun Life replies that the denial letter states that the consultant deciding the appeal will not be bound by any findings of the initial review. [DE 11 at 124]. Sproul contends that requiring a claimant to explain the reasons why he disagrees with the decision interferes with the appeals process, because it allows deference to the prior opinion and may not be "a fresh review of the claim." [DE 8 at 109-110]. Yet, 29 CFR 2560.503-1(h)(2)(ii) states that a plan must "[p]rovide claimants the opportunity to submit written comments, documents, records, and other information relating to the claim for benefits," and (h)(2)(iv)

requires that a review account for anything a claimant submits under (ii*). See Balmert v. Reliance Standard Life Ins. Co.*, 601 F.3d 497, 503 (6th Cir. 2010) ("pursuant to 29 C.F.R. § 2560.503–1(h)(2)(ii), [plaintiff] had the right, during the course of her administrative appeal, to submit written comments, documents, records, and other information for the purpose of rebutting [defendant's independent medical examiner's] report or otherwise bolstering her claim.") *Requiring* claimants to submit an explanation rebutting a denial of benefits does not prevent a fresh review of the claim when the applicable ERISA regulations grant a claimant the *right* to submit an explanation rebutting the same denial.

*Balmert* illustrates why Sproul's proposed standard for claim appeals would be untenable. In *Balmert*, the plaintiff filed for disability benefits and the defendant denied the claim because "there is no documentation of a physical condition that would preclude you from performing the material duties of your own occupation." 601 F.3d 497 at 499. Balmert administratively appealed the denial of her disability benefits and provided additional medical and other information pertaining to her claim in support of her appeal. *Id.* On judicial appeal, the Sixth Circuit noted that:

> In the context of an administrative appeal of an adverse benefits determination, [1(h)(2)] outlines the essential procedural requirements for a full and fair review. These procedural requirements include . . . (4) the requirement that the fiduciary take into account all comments, documents, records, and other information submitted by the claimant relating to the claim.

*Balmert*, 601 F.3d 497 at 502.

As the court noted, a fiduciary not only is permitted to consider such information submitted to it when making a decision, it is one of the "essential procedural requirements for a full and fair review." *Id*. Yet under Sproul's proposed standard, whether an appeal was a fresh review or improperly deferential to a denial would hinge entirely on whether a claimant was told to submit the information considered or independently decided to do so. The Court is not aware that any

9

other court has read that restriction into the language of ERISA or its regulations and this Court declines to adopt such an interpretation.

Turning to the second prong of the analysis, it is undisputed that Sun Life describes the procedure in the Summary Plan Description and this requirement has therefore been satisfied.

The third prong determines whether the plan contains any provision or is administered in a way that "unduly inhibits or hampers the initiation or processing of plan claims." Sproul has not alleged that Sun Life's plan unduly inhibits or hampers the initiation or processing of plan claims. And Sun Life has established this prong despite Sproul's argument that Sun Life improperly affords deference to the initial decision. .

Finally, the plan must provide a procedure for informing participants in a timely fashion of the time periods for decisions on claims and for making appeals. Sun Life argues that they have complied with this requirement and Sproul does not contest this point. Sun Life's procedure for informing participants of these time periods can be found in the "Policy/Certificate/Summary Plan Description," [DE 6-1], and as a result Sun Life has satisfied this requirement.

Sun Life has (1) established a procedure for the filing of claims by participants and beneficiaries, provided for a written notification procedure for denial or partial denial of claims, and provided for an appeal procedure for denied or partially denied claims; (2) described that procedure in the Summary Plan Description; (3) the procedure does not contain any provision and is not administered in a way that "unduly inhibits or hampers the initiation or processing of plan claims;' and (4) provides for a procedure for informing participants in a timely fashion of the time periods for decisions on claims made and the time periods for making appeals and receiving decisions thereon. As a result, the Court finds that Sun Life has not failed to establish and maintain reasonable procedures governing the notification of benefit determinations.

2.

*3. Description of Additional Material*

As part of ERISA's requirements of adequate notice and a reasonable opportunity for full and fair review, a claimant must be given, among other things, " [a] description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary." 29 C.F.R. 2560.503–1(g). The "essential purpose" of Section 1133 is twofold: "(1) to notify the claimant of the specific reasons for a claim denial, and (2) to provide the claimant an opportunity to have that decision reviewed by the fiduciary." *Wenner v. Sun Life Assur. Co. of Canada*, 482 F.3d 878, 882 (6th Cir.2007) (citing *Moore v. LaFayette Life Ins. Co.*, 458 F.3d 416, 436 (6th Cir.2006)). The Sixth Circuit has adopted a rule of substantial compliance for ERISA's procedural requirements. *Moore*, 458 F.3d at 436 (*citing Kent v. United of Omaha Life Ins. Co.*, 96 F.3d 803, 807 (6th Cir.1996)).

Sproul argues that Sun Life's denial letter failed to provide a description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary. [DE 8 at 110-111]. ERISA's procedural requirements do not command a denial letter to "describe every detail relating to the decision to deny benefits," but a letter "completely devoid of any discussion of a claimant's medical evidence submitted to support disability, or why [fiduciary's] physician's conclusions were being favored over a claimant's physician's conclusions, does not comport with ERISA's procedural requirements." *Blajei v. Sedgwick Claims Mgmt. Servs., Inc.*, 721 F. Supp. 2d 584, 611 (E.D. Mich. 2010) (citing *Majeski v. Metropolitan Life Ins. Co.*, 590 F.3d 478, 484 (7th Cir.2009).

In *McCartha v. Nat'l City Corp.*, the Sixth Circuit noted circumstances where a fiduciary has failed to provide "additional information necessary to perfect her claim so as to be in substantial compliance with § 1133." 419 F.3d 437, 447 (6th Cir. 2005). The *McCartha* Court outlined a D.C. Circuit case that is factually similar to Plaintiff's argument, *White v. Aetna Life*

11

*Ins. Co.*, 210 F.3d 412, 417–18 (D.C. Cir. 2000). In *White*, the plaintiff applied for and received short-term disability benefits based on a short-term disability certification by Dr. Engh, an orthopedic surgeon. The plaintiff then applied for long-term disability benefits, which were denied. Although White had been given three reasons her claim was denied, that "Dr. Engh had refused to certify White as disabled," was a fourth reason for the decision, but that reason was not provided to White. *Id*. at 418. The D.C. Court of Appeals held that "[n]ot telling White that her claim had been denied in part because Dr. Engh had failed to certify her as disabled amounts to a major omission," and ruled that White did not have "any way of knowing that to perfect the claim, White needed to get Dr. Engh to certify her as disabled." *Id*. at 417-18. The court concluded that the defendant had failed to give White a "specific reason" for denying her claim and failed to tell her the additional information necessary to perfect her claim to substantially comply with § 1133. *Id*. at 418.

Sun Life's denial letter states that Sun Life reviewed Sproul's medical file and that it did not support "a change in function status that resulted in you ceasing to work on October 30, 2021." [DE 6-3 at 80]. Nor was there an "office visit or exam with a treating provider on or around October 30, 2021 that endorsed your impairment requiring work stoppage and assigned restrictions and limitations (R&Ls)." [*Id*.]. It also states that Sproul "does not meet the definition of total disability" as the information "does not support your claim that you are unable to perform the material and substantial duties of your regular occupation." [*Id*.].

Even viewed in the light most favorable to Sproul, this letter satisfies the requirement of providing a description of the additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary. Unlike the defendant in *White*, Sun Life did not fail to tell Sproul that his claim had been denied because his

12

doctor had "failed to certify [him] as disabled" – in fact, that is precisely what they told him. *White*, 210 F.3d 412 at 418. While White did not have "any way of knowing that to perfect the claim, [she] needed to get [her doctor] to certify her as disabled," Sproul was told that his benefits were denied because his medical file did not support the claim that he was totally disabled. *White*, 210 F.3d 412 at 418. The letter (1) stated Sproul's claim was denied because he did not meet the definition for total disability; (2) defined total disability under the policy and why he did not meet that definition; (3) informed him that his medical file did not support a change in function status that resulted in him ceasing to work; and (4) stated that he lacked an office visit or exam that endorsed impairment requiring work stoppage. [DE 6-3 at 80]. Sun Life therefore did not fail to give Sproul a "specific reason" for denying his claim or fail to tell him the additional information necessary to perfect his claim.

### 4. *Explanation of Disagreement with Treating Physicians*

Sproul argues that Sun Life did not provide a sufficient explanation for why it disagreed with his treating physicians. [DE 8 at 111]. Sproul claims that Sun Life concedes in its motion that its explanation consists only of the following sentence: "Our Medical Consultant reviewed Dr. Vachon (Neurology), Dr. Patel (PCP) and Wes Akers PA medical records and disagrees with their opinions because the medical records did not demonstrate a change in functional status requiring a work stoppage and assigned restrictions and limitations." [*Id*. at 112]. Sun Life contends that the claim determination letter "explained in detail over multiple pages the evidence considered, as well as what Sun Life's medical reviewer found to be missing." [DE 11 at 125].

In an adverse benefit determination for disability benefits, the fiduciary must include "an explanation of the basis for disagreeing with or not following . . . [t]he views presented by the claimant to the plan of health care professionals treating the claimant and vocational professionals who evaluated the claimant." 29 C.F.R. § 2560.503-1 (g)(1)(vii)(A)(i). A plan may not "reject

13

summarily the opinions of a treating physician, but must instead give reasons for adopting an alternative opinion. *Evans v. Unumprovident Corp.*, 434 F.3d 866, 877 (6th Cir. 2006) ("[A] plan administrator may not arbitrarily disregard reliable medical evidence proffered by a claimant, including the opinions of a treating physician.") (citing, *inter alia*, *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 833, 123 S. Ct. 1965, 1972, 155 L. Ed. 2d 1034 (2003).

Sun Life's explanation did not consist of only one sentence. The denial letter outlines the medical consultant's review and opinion, which references specific dates Sproul consulted his physicians, what they diagnosed Sproul with, and why the consultant disagreed with them. For example, Sun Life disagreed with the various conclusions in the medical files submitted by Sproul's Neurologist, Dr. Vachon. In the denial letter, the medical consultant gives reasons for the disagreement:

> The clmt not evaluated until 01/17/2022 by Dr. Vachon with no change in exam findings or treatment rendered by the submitted file so remains unclear what changed on or around the date the clmt ceased working on 10/30/2021. Furthermore, the clmt' hand writing legible and neat on all forms submitted to date through 03/01/2022. With an impairing tremor of the dominant right hand, one would expect to see tremor affecting the right hand that led to the clmt to stop working be more evident in the signature/hand writing of this clmt on forms signed and submitted with a clear and legible signature by the clmt.

[DE 6-3 at 79-80].

The medical consultant provided a similar analysis for each doctor visit described in the denial letter, stating their conclusion and why it was different from Sproul's physicians. Even viewed in the light most favorable to Sproul, Sun Life's denial letter satisfied the requirement that it explain the basis for disagreeing with or not following the views presented by the claimant to

14

the plan of health care professionals treating the claimant and vocational professionals who evaluated the claimant.[4]

### 5. *Appropriate Health Care Professional*

Finally, ERISA requires a claims procedure to provide that "in deciding an appeal of any adverse benefit determination that is based in whole or in part on a medical judgement . . . the appropriate named fiduciary shall consult with a health care professional who has appropriate training and experience in the field of medicine involved in the medical judgment." 29 C.F.R. § 2560.503-1(h)(3)(iii). The health care professional need not be a physician, but may be "any individual who is licensed, accredited, or certified to provide specified health services consistent with State law." *Neiheisel v. AK Steel Corp.*, No. 103 CV 868, 2005 WL 1077593, at *8 (S.D. Ohio Feb. 17, 2005); *see* 29 C.F.R. § 2560-503.1(m)(7). The Sixth Circuit has recently held that "the requirement that a group health plan 'consult with a health care professional who has appropriate training and experience in the field of medicine involved in the medical judgment,' applies only 'in deciding an appeal of any adverse benefit determination.'" *Avery v. Sedgwick Claims Mgmt. Servs., Inc.*, No. 22-1960, 2023 WL 4703865, at *7 (6th Cir. July 24, 2023).

As noted above, ERISA's requirement that a health care professional be consulted applies only when deciding an appeal, not to the initial determination. To the extent that Sproul argues that the consulting a health care professional requirement implicates "the independence and impartiality" requirements of 29 CFR 2560.503-1(b)(7), [DE 8 at 113], the Court considers it in its analysis.

---

[4] This opinion does not determine whether the reasons Sun Life provided in the denial letter were a proper basis for denying disability benefits. The question at the motion-to-dismiss stage is simply if Sun Life gave a sufficient explanation of the basis for disagreeing with Sproul's treating physicians, not whether the reasons it gave support the denial of benefits.

Sproul cites no authority for how the independence and impartiality of the initial claim determination may be compromised by whether the medical reviewer is as qualified as a claimant's treating physicians to render a decision on his medical condition. Whether Nurse Stefano was qualified to decide the claim could be relevant in analyzing whether the denial of benefits was proper, but it is immaterial to whether she was independent and impartial. Sproul's argument that Sun Life used its own employee to review the decision and that fact implicates the independence and impartiality of the decision has more merit, [DE 8 at 113], but is similarly unavailing. That Sun Life pays Nurse Stefano to review medical claims does not render her opinion "unworthy of credence, [as] the same could be said of the opinions of a claimant's treating physicians, which could also be biased by the additional factor that a claimant's treating physicians are personally acquainted with the claimant through the physician-patient relationship." *Morris v. Am. Elec. Power Sys. Long-Term Disability Plan*, No. 2:07 CV 183, 2008 WL 4449084, at *14 (S.D. Ohio Sept. 30, 2008), *aff'd sub nom. Morris v. Am. Elec. Power Long-Term Disability Plan*, 399 F. App'x 978 (6th Cir. 2010). Again, at this stage, the Court is not deciding whether the initial claims determination was the correct one, only whether ERISA regulations forbid Sun life from using Nurse Stefano as the reviewer. They do not.

Finally, Sproul argues that the review procedure violated ERISA claim regulations because Mr. Sproul has Parkinson's disease, a patient with Parkinson's disease is generally required to see a neurologist for treatment, and Sun Life's nurse reviewer lacks any training or qualifications that would permit her to make a medical diagnosis or finding concerning Parkinson's disease. [DE 8 at 113-14]. Even if Nurse Stefano could not apricate Sproul's medical history and diagnoses as a neurologist would, it is unclear how that would compromise the independence and impartiality of the review. Regardless, ERISA does not require a claim reviewer to be a specialist in the medical

area for the condition at issue in the claim. *See e.g.*, *Wages v. Sandler O'Neill & Partners, L.P.*, 37 F. App'x 108, 110 (6th Cir. 2002) (upholding the denial of benefits for a claimant asserting she had fibromyalgia, even though the nurse case manager for the claim was not a rheumatologist).

In sum, Sproul's allegations are not enough to survive a motion to dismiss because even if true, they could not establish that Sproul exhausted his administrative remedies. Under the plan, Sproul could only appeal the denial of his first-level review within 180 days of that decision, which was issued on August 11, 2022. The appeals period expired on February 7, 2023 and Sproul did not appeal. Under these circumstances, courts typically dismiss unexhausted ERISA claims with prejudice where the opportunity to pursue administrative remedies has expired. *See, e.g.*, *Harris v. Pepsi Bottling Grp., Inc.*, 438 F.Supp.2d 728, 734 (E.D.Ky.2006) (holding that dismissal with prejudice is appropriate where the time for internal appeals has lapsed). However, Sun Life agrees in the alternative that the claim should be remanded so that "the administrative process can be completed through the filing and consideration of an appeal." [DE 11 at 127]. Sproul has not pleaded that the exhaustion of his administrative remedies would be futile. *See Coomer v. Bethesda Hosp., Inc.*, 370 F.3d 499, 505 (6th Cir. 2004) (stating that the plaintiff did not properly plead futility); *see also Zhou v. Guardian Life Ins. Co. of Am.*, 295 F.3d 677, 680 (7th Cir. 2002) ("When a party has proffered no facts indicating that the review procedure that he initiated will not work, the futility exception does not apply." (citation omitted). Sproul argues that if the court finds his administrative remedies were not exhausted, "the proper remedy is **not** dismissal. Rather, it is for the Court to remand the claim to Sun Life and for the claim to immediately be considered as if filed on appeal." [DE 8 at 115] (emphasis in original).

The Court will remand this action for Sun Life to make a final determination regarding Mr. Sproul's right to disability benefits. 29 CFR 2560.503-1(l)(2)(ii) provides that "the claim shall be

considered as re-filed on appeal upon the plan's receipt of the decision of the court," and in accordance with its claim procedure for appeals Sun Life shall have 45 days from the entry of this order to notify Mr. Sproul of its decision on review. [DE 6, Appendix 1 at 28]; *see Smith v. Loc. No. 25 Iron Workers' Pension Plan,* 99 F. App'x 695, 699 (6th Cir. 2004) (upholding remand for administrative exhaustion for a claimant even though his opportunity to administratively appeal had expired under the plan, because defendants had represented to the court they would not assert a failure to exhaust administrate remedies in a timely manner if remanded).

## IV.   CONCLUSION

For the reasons set for above, the Court ORDERS as follows:

(1) Sun Life's Motion to Dismiss [DE 6] is **GRANTED** and Sproul's breach-of-contract claim is **DISMISSED WITHOUT PREJUDICE**.

(2) Sproul has not established the exhaustion of his administrative remedies, and the Court **REMANDS** this action to Sun Life.

(3) Within **45 days** from the date of entry of this order, Sun Life **SHALL** issue its final decision regarding Sproul's appeal.

(4) This matter is **STRICKEN** from the Court's active docket.

*Rebecca Grady Jennings, District Judge*
United States District Court

September 29, 2023

Cc:   Counsel of record